NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0463n.06

Case No. 20-1385

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| TRISHA SHANDOR, Personal Representative of the Estate of Larry Moore Krueger, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FILED** Oct 13, 2021 DEBORAH S. HUNT, Clerk |
| Plaintiff - Appellant, | | |
| v. | | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CITY OF EASTPOINTE, MICHIGAN; LIEUTENANT CHILDS; OTHER UNNAMED EPD OFFICERS; JOSEPH MADONIA, | | |
| Defendants - Appellees. | | |

BEFORE: GIBBONS, WHITE, and THAPAR, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Larry Moore Krueger's grandson was arrested for driving Krueger's 2001 Dodge Neon while intoxicated, and the Eastpointe Police impounded the car. Instead of paying the towing and storage fees to reclaim the Neon, Krueger sued the Eastpointe Police and individual officers, alleging violations of his federal constitutional rights and state tort law. The district court granted the defendants' motion for summary judgment, and Krueger appealed. We affirm.

I.

Early in the morning on June 7, 2018, Douglas Slayton was pulled over for reckless driving after an Eastpointe police officer observed him speeding and swerving between lanes. At the time, Slayton was driving a 2001 Dodge Neon owned by his grandfather, Larry Moore Krueger. Slayton

had permission to drive the Neon to and from work, which is what he was doing the night he was pulled over.

During the traffic stop, officers noted that Slayton "smell[ed] of intoxicants" and had "bloodshot/droopy eyes." DE 21-3, Police Report, Page ID 132. Officers searched Slayton's driver's license and learned that he had three current suspensions and one outstanding warrant. Slayton also failed several field sobriety tests and had a blood alcohol level of .258, over three times the legal limit in Michigan. Slayton was arrested for driving while intoxicated and driving with a suspended license. Officers called a towing company to take the Neon and conducted an inventory search, where they found marijuana and cocaine. Slayton was subsequently charged with possession of cocaine, possession of marijuana, operating a vehicle while intoxicated, and driving with a suspended license.

Shortly after his arrest, Slayton signed a Notice of Seizure and Intent to Forfeit the Neon. The notice stated that the City of Eastpointe intended to have the Neon forfeited pursuant to Mich. Comp. Laws § 333.7521, which provides for the forfeiture of property used to transport controlled substances. The Notice of Seizure stated that "[i]f you wish to claim an interest in the [Neon], you must file a written claim with the Eastpointe Police Department." DE 21-6, Notice, Page ID 139. During his deposition, Slayton acknowledged that his signature appeared on the Notice of Seizure but claimed that he was too intoxicated at the time to remember signing or receiving the form.

Approximately two days after Slayton was arrested, he called his mother, Trisha Shandor, to let her know that he was in jail and that the Neon had been impounded. Shandor then told her father, Krueger. After Krueger learned that the Neon had been seized, he went to the police station to inquire about the vehicle and was told that it was impounded and he could not have it back yet. Krueger hired a lawyer to "[t]ake care of it all." DE 23-3, Krueger Deposition, Page ID 261. His

attorney called the police department and was advised that he could file a claim and petition for the release of the car pursuant to Mich. Comp. Laws § 333.7523. At some later date, Krueger received a letter from the police informing him that the Neon had been seized. The letter was initially sent to the wrong address because Krueger had not updated his contact information on the Neon's title registration after moving several years earlier.

Krueger's counsel filed a motion "to determine title and/or for temporary/preliminary injunction/stay barring sale/conveyance" of the Neon in the Michigan state court that was handling Slayton's criminal case at the time. DE 23-12, Motion, Page ID 308. The motion requested that Krueger be immediately awarded possession of the vehicle. The Michigan district court denied Krueger's motion for lack of jurisdiction, informing him that only Michigan circuit courts could hear claims related to seized property. Slayton's case was later bound over to the Michigan circuit court, but Krueger did not refile his motion in that court. The government never filed a motion to forfeit the Neon, and the vehicle remains impounded at a storage lot "awaiting release to Krueger upon payment of the accumulated storage costs and fees." CA6 R. 29, Appellees' Br., at 12. According to Krueger, storage fees for the Neon are at least $6,676.

On February 28, 2019, Krueger filed his complaint in federal court under 42 U.S.C. § 1983 against the City of Eastpointe, Eastpointe police officer Joseph Madonia, Lieutenant Neil Childs, and other unnamed officers involved with the impoundment of the Neon. Krueger alleged four claims: unreasonable search and seizure in violation of the Fourth Amendment, violation of due process based on the Fifth and Fourteenth Amendments, excessive fines in bad faith in violation of Eighth Amendment, and conversion in violation of Michigan state law. The parties each filed motions for summary judgment, and the district court denied Krueger's motion and granted defendants' motion on all four claims. Krueger timely appealed.

In February 2021, Krueger's attorney notified this court that Krueger had passed away and moved to continue oral argument until Krueger's personal representative could be substituted as a party. Krueger's attorney subsequently moved for substitution of Shandor, Krueger's personal representative. The court granted Krueger's motion. We now decide the appeal on the briefs.

## II.

"We review a district court's grant of summary judgment de novo." *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (quoting *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 486 (6th Cir. 2006)). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also* Fed. R. Civ. P. 56(a). The court must view facts in the record, and reasonable inferences that can be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III.

We affirm the district court's grant of summary judgment. Krueger failed to articulate any federal constitutional violations or violations of state law.

A.

Krueger claimed that the search and seizure of the Neon violated the Fourth Amendment. The district court granted defendants' motion for summary judgment on this claim after concluding that the Eastpointe police had a lawful basis for seizing and searching the Neon.

After Slayton's arrest, the police lawfully towed and impounded the Neon.[1]  An officer has discretion to impound a vehicle when "that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987)).  When there is no one else readily available to accept possession, the police have the discretionary authority "to impound the vehicle in the absence of any licensed driver to attend to it." *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994); *see also South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

The police had the discretion to impound the Neon.  Slayton was arrested between 3 a.m. and 4 a.m., and there was no one else present who could have taken possession of the vehicle. Krueger presented no evidence that the police impounded the Neon based on a suspicion of criminal activity.  Instead, Krueger appeared to argue that the police should have searched the vehicle's title information and contacted the owner.  But Krueger failed to explain what difference a title search would have made; Krueger conceded that the vehicle's title listed the incorrect address, admitted that he was asleep when Slayton was arrested, and acknowledged that he did not drive at the time based on his doctor's recommendation.  The police acted within their discretion to impound the Neon after Slayton's arrest.

---

[1] Krueger did not challenge the officer's initial stop and arrest of Slayton.

Even assuming that Krueger has standing to challenge the search of the car, *see United States v. Blanco*, 844 F.2d 344, 349 (6th Cir. 1988), once the police took custody of the Neon, they were permitted to conduct a valid inventory search. *See United States v. Smith*, 510 F.3d 641, 650–51 (6th Cir. 2007). There was no Fourth Amendment violation.

B.

Krueger appears to allege that the defendants violated his procedural and substantive due process rights. However, Krueger waived the right to appeal any potential substantive due process claim by failing to articulate a developed argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

To succeed on a procedural due process claim, "a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005). Assuming that Krueger had a protected property interest in the Neon, which the defendants do not contest, the only question before the panel is whether Krueger was afforded appropriate process.

Procedural due process requires that the plaintiff "be given notice of the case against him and [an] opportunity to meet it." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews v. Elridge*, 424 U.S. 319, 348–49 (1976) (alteration in original)). "[T]he notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance.'" *Id.* at 560 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950)). While due process does not require that the plaintiff receive actual notice, *Jones v. Flowers*, 547 U.S. 220, 226 (2006), the notice

requirement of due process is satisfied if the plaintiff receives actual notice, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The City of Eastpointe provided sufficient notice of the seizure of the Neon because the Eastpointe Police Department's methods were reasonably calculated to inform interested parties of the seizure of the Neon. After Slayton's arrest, the police gave him a Notice of Seizure and Intent to Forfeit, which explained how someone could claim an interest in the vehicle. The police also attempted to contact Krueger directly by sending a letter to the address listed on the Neon's title registration. Krueger is mistaken that due process requires the state to ensure that he received a copy of the Notice of Seizure and Intent to Forfeit. Due process does not require a specific set of procedures, only that the procedures undertaken be reasonably calculated to notify persons of the deprivation of their protected interest. *See Espinosa*, 559 U.S. at 272. Giving notice to the person driving the vehicle when it was towed and sending a letter to the address listed on the vehicle's title information meet this requirement.

Additionally, Krueger had actual notice from multiple sources that the Neon had been impounded. Krueger knew the Neon was impounded "early in June of 2018" when Shandor told him that Slayton had been arrested and the Neon towed. DE 23-3, Krueger Dep., Page ID 260. Krueger also ultimately received the letter originally sent to his old address informing him of the seizure. Finally, Krueger himself went to the Eastpointe police station to inquire about the Neon and was told that it had been impounded. Krueger's actual notice that the Neon was impounded is a separate, independent basis to deny his procedural due process claim. *See Espinosa*, 559 U.S. at 272.

Krueger also appears to argue that he lacked an opportunity to be heard. The precise due-process requirements for a hearing vary depending on the "importance of the interests at stake and

the nature of the subsequent proceedings." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).  At a minimum, a person must have "an opportunity to be heard at a meaningful time and in a meaningful manner," including being able "to view and contest the evidence" against them. *Id.*  To prevail under § 1983, the plaintiff must prove "the inadequacy of state or administrative processes and remedies to redress her due process violations." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004).

Krueger did not demonstrate that defendants violated his due process right to a hearing or that the available state process was inadequate to redress his grievances.  Krueger never filed a motion with the Michigan state circuit court, which has exclusive jurisdiction over potential forfeiture proceedings.  *See* Mich. Comp. Laws § 333.7511(1) (establishing the circuit court's jurisdiction).[2]  Krueger also did not explain how the Michigan circuit court proceedings would deprive him of a meaningful opportunity to be heard.

Krueger repeatedly claimed that he is protected by the "innocent owner defense."  While somewhat unclear, it appears Krueger was referring to Mich. Comp. Laws § 333.7521, which states that "[a] conveyance is not subject to forfeiture by reason of any act or omission established by the owner of that conveyance to have been committed or omitted without the owner's knowledge or consent."  Mich. Comp. Laws § 333.7521(d)(ii).  Innocent ownership, however, is an affirmative defense in a civil forfeiture proceeding, *see In re Forfeiture of 2000 GMC Denali*

---

[2] In his response to defendants' motion for summary judgment, Krueger admitted that he did not file a motion seeking return of the Neon in Michigan circuit court.  DE 28, Mot. for Summ. J., Page ID 340; DE 29, Pl.'s Resp. to Mot. Summ. J., Page ID 409.  Krueger argues that his lawyer attempted to file a motion in circuit court, but that an assistant court clerk refused to file the motion.  CA6 R. 25, Appellant's Br. at 26–27.  Krueger, however, has not suggested that any of the defendants were involved in his failure to file a motion seeking return of the Neon in circuit court.

*& Contents*, 892 N.W.2d 388, 400 (Mich. Ct. App. 2016), and is inapplicable here because no forfeiture was pursued.

## C.

Next, Krueger alleged that requiring him to pay towing and storage fees to retake possession of the Neon is an excessive fine in violation of the Eighth Amendment. The purpose of the Excessive Fines Clause is to "limit[] the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) (emphasis in *Austin*)); *see also Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (holding that the Excessive Fines Clause applies to the states through incorporation under the Fourteenth Amendment). If one of the goals of a fine is to punish, then the fine is subject to the scrutiny of the Excessive Fines Clause. *Austin*, 509 U.S. at 610. "A punitive forfeiture violates the Excessive Fines Clause if it is *grossly disproportionate* to the gravity of a defendant's offense." *Ross v. Duggan*, 402 F.3d 575, 588–89 (6th Cir. 2004) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Krueger's Eighth Amendment claim fails for the simple reason that the towing and storage fees the Neon has accrued are not punishment for an offense. Krueger was not charged with any offense. The towing and storage fees are remedial, not punitive. *See Bajakajian*, 524 U.S. at 329 (concluding that a fine is remedial when it compensates the government for a loss). The City of Eastpointe is asking for compensation for the fees it has incurred storing the Neon on Krueger's behalf for over two years. Krueger argued that the towing and storage fees "are definitely punitive because they have been allowed to grow in direct consequence of the Defendants' failure to fairly, correctly, and promptly pursue, ascertain and recognize Krueger's existence and address," CA6

R.  25, Appellant Br., at 29, but this argument is misguided.  The storage fees have accrued because Krueger failed to promptly pay after learning that the Neon had been impounded, not because the defendants failed to contact him.  Because the fees do not serve a punitive purpose, the Eighth Amendment does not apply.

### D.

Krueger also argued that the impounding of the Neon was an unconstitutional taking. Krueger raised this argument for the first time in his response to defendants' motion for summary judgment before the district court and repeats the argument on appeal.  Because Krueger failed to raise this argument in his initial pleadings, we will not consider it now.  *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

### E.

Krueger's last substantive claim is for conversion under Michigan law.  To prove conversion, the plaintiff must show that "the defendant employed the converted property for some purpose personal to the defendant's interests." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 148 (Mich. 2015).  The plaintiff must show that the defendant took the plaintiff's property for his "own use." *Id.* While the Michigan Supreme Court has interpreted "own use" broadly to mean "some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose," *id.*, Krueger presented no evidence that either the City of Eastpointe or any of the individual defendants have employed the Neon for a personal purpose since the vehicle was impounded.  It is undisputed that the Neon has been sitting in a storage lot.[3]

---

[3] In his appellate brief, Krueger claimed that the Neon has been moved "to some unknown place or maybe sold," CA6 R. 25, Appellant Br., at 18, but there is no evidence to support that claim.

Without pointing to any evidence in the record, Krueger claimed that the defendants were keeping the Neon as leverage to force him "to pay the towing, forfeiture fee and yard charges, all charges which are solely attributable to Slayton (sic) conduct and nothing done by or involving the innocent owner sleeping Krueger." CA6 R. 25, Appellant Br., at 18–19. The defendants, however, were not asking Krueger to pay the storage fees for their own benefit; they were simply seeking compensation for costs the state accrued on Krueger's behalf by storing the Neon for years. Thus, this case is distinguishable from cases where courts have found the defendant used the plaintiff's property as a bargaining tool. *See, e.g.*, *Tyson v. Sterling Rental, Inc.*, No. 13-cv-13490, 2017 WL 11368343, at *4 (E.D. Mich. Apr. 10, 2017). Accordingly, Krueger's conversion claim fails.

## IV.

We affirm the district court's order granting defendants' motion for summary judgment.